### LOUISIANA EXCURSION CO. v. GIDIONSEN et al.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1914.)

No. 4059.

ADMIRALTY (§ 118*)—REVIEW ON APPEAL—FINDINGS OF FACT.

> A finding of fact made by a court of admiralty on conflicting evidence is presumptively correct, and will not be reversed by the appellate court, unless the record clearly shows by the weight of the evidence that it is erroneous.
>
> [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 758–775, 794; Dec. Dig. § 118.*
>
> Appealable orders and decrees in admiralty, see note to In re Oceanic Steam Navigation Co., 124 C. C. A. 348.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in admiralty by the Louisiana Excursion Company against A. Gidionsen, Henry Scherf, and the steamer Belle of the Bends. Decree for respondents, and libelant appeals. Affirmed.

Paul A. Sompayrac and William H. Byrnes, Jr., both of New Orleans, La., for libelant.

William F. Woerner, of St. Louis, Mo., and Campbell Cummings, of Jefferson City, Mo., for appellee Gidionsen.

Before SANBORN, Circuit Judge, and TRIEBER and REED, District Judges.

SANBORN, Circuit Judge. The appeal in this case presents the single question whether or not the court below correctly decided questions of fact upon conflicting testimony. The Louisiana Excursion Company filed its libel in admiralty against Henry Scherf, H. Gidionsen, and the steamer Belle of the Bends, and asked a decree that Scherf and Gidionsen pay it $6,000, part of the purchase price of the steamer, and that the steamer be condemned and sold to pay that amount. The averments of the libel were that Scherf and Gidionsen bought the boat of the libelant for $4,000 paid by Gidionsen and a note of $6,000 made by one Brunner, which purported to be secured by an assignment of rents to accrue from certain real estate in St. Louis, and that Scherf and Gidionsen induced the libelant to make the sale by false representations that the assignment of the rents and certain insurance policies

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on the real estate amply secured the payment of the note, when in fact there was a prior assignment of the rents, a part of the improvements on the land had been condemned by the city of St. Louis, the remainder was condemned within two months after the sale, the premiums on the insurance policies had not been paid, and the policies were canceled. There, was a decree pro confesso against Scherf, and the case proceeded to answer and trial against Gidionsen.

His answer was a denial that he participated in the purchase of the steamer of the libelant, or in any representations that the assignment of the rents and the insurance policies well secured the Brunner note, and an assertion that the facts relating to the transaction were these: Scherf controlled the Brunner note and the assignment of the rents in question, and had tried to purchase the steamer of the libelant about a month before May 12, 1912, when the sale was made. At that earlier date the president of the libelant and its broker, who resided in New Orleans, came to. St. Louis, spent several days and examined the security offered by the assignment; but the negotiation failed because Scherf could not raise the money to make the payment of cash required. A few days before the sale Scherf applied to Gidionsen for a loan on the security of the steamer, and he went with Scherf to New Orleans to examine the boat, which was lying there, and agreed to loan $4,000 upon it. He made the loan, paid the $4,000, and took as his security the assignment of two prior notes for $1,500 and $12,000, respectively, which were secured by mortgages on the steamer, the payment of which had been previously assumed by the libelant, and for this payment of $4,000 and the Brunner note and the assignment of the rents of the St. Louis real estate the libelant sold and conveyed the steamer to Scherf by a bill of sale which expressly recited that the note of Brunner was secured on property in St. Louis and "not resting on the boat." Scherf employed Gidionsen to take the steamer to St. Louis and promised to pay him any necessary expenses of the trip when he arrived there. The steamer broke down on the way, and Gidionsen was compelled to spend about $3,500 to repair her and get her to St. Louis. He drew on Scherf for the money, but Scherf did not pay the drafts, and after Gidionsen's arrival at St. Louis Scherf said he could not pay the expenses and the prior liens held by Gidionsen, and made a bill of sale of the steamer to the latter.

The evidence is uncontradicted that Gidionsen had no interest in the St. Louis real estate, the rents therefrom, or the Brunner note, and that he did not participate in the negotiation with the president of the libelant or its broker at St. Louis, that he never met either of them until he arrived in New Orleans about the time of the sale, and that he had never examined the St. Louis property, as they had, with a view of making a loan on the security of its rents. All the written evidence of the transaction is consistent with the statement of it made by Gidionsen in his answer, and that statement is supported by his testimony at the trial. The record contains some scraps of testimony, some disconnected incidents, tending to raise a suspicion that the interest of Gidionsen in the sale was greater than that of a secured creditor, but nothing to prove that charge, and it contains no evidence that at the time of the sale to Scherf, or at any time before he incurred the expenses of

the trip to St. Louis, he had any knowledge or intimation that the assignment of the rents did not amply secure the payment of Brunner's note. A recital of the testimony of the various witnesses might demonstrate this, but it would be futile. Suffice it to say that each of the members of the court has carefully read all the evidence in the case. The finding of the court below is supported by the legal presumption that its decision of questions of fact upon conflicting testimony was right, unless the record clearly shows that it was erroneous, by the writings and by the weight of the evidence, and this court is unanimous in its conclusion that it should be sustained.

Let the decree in favor of Gidionsen be affirmed.